# In the United States Court of Federal Claims

No. 12-468C
(Filed: April 17, 2015)

*************************************

| | | |
|---|---|---|
| DUSTIN BARGSLEY, RANDY | * | |
| HOWARD, SONNY MORRISON, BRIAN | * | Motion to Dismiss; Jurisdiction; |
| WILSON, and ALFONSO AGUILAR, on | * | Recoupment of Disability Severance Pay |
| Behalf of Themselves and All Other | * | From Veterans' Disability Compensation; |
| Individuals Similarly Situated, | * | 10 U.S.C. § 1212(d); Money-Mandating |
| | * | Statute; Veterans' Disability Compensation, |
| Plaintiffs, | * | 38 U.S.C. §§ 1110, 1131, 1161; Claims for |
| | * | Veterans' Benefits, 38 U.S.C. § 5101; |
| v. | * | Review of Veterans' Benefits Claims, 38 |
| | * | U.S.C. §§ 511, 7104, 7252, 7292; |
| THE UNITED STATES, | * | Comprehensive Scheme of Review; |
| | * | Bormes; Fausto; Vereda, Ltda.; Carlisle |
| Defendant. | * | |

*************************************

David Z. Bodenheimer, Washington, DC, for plaintiffs.

Douglas K. Mickle, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

The five named plaintiffs in this action are veterans of the United States military who, as a result of injuries they sustained during their tours of duty in Iraq during Operation Iraqi Freedom, were separated from the military for disability. Their disabilities were all deemed to be both the direct result of a combat-related injury and incurred in the line of duty as a direct result of armed conflict, but their separation documents failed to reflect these facts.

Upon their separation from the military, plaintiffs received disability severance pay. However, when they subsequently began to receive disability compensation from the United States Department of Veterans Affairs ("VA"), the VA reduced the amount of their disability compensation by the amount of their disability severance pay. This reduction was contrary to a then-recently enacted law that prohibited the recoupment of disability severance pay from veterans who became disabled as a result of injuries sustained in the line of duty in a combat zone, or during the performance of duty in combat-related operations. In their initial complaint in this court, plaintiffs sought to have their separation documents corrected to reflect that their

disabilities were combat related.  The correction sought by plaintiffs would have enabled the VA to repay plaintiffs the funds it withheld from their disability compensation.

After plaintiffs filed suit, various entities within the military endeavored to identify the service members whose separation documents should have reflected that they were separated as a result of a combat-related disability, and the VA sought to repay any funds that it had withheld from those service members' disability compensation.  As a result of these efforts, the VA refunded money to all five plaintiffs.  However, plaintiffs were not convinced that they, or the class of similarly situated individuals that they sought to represent, received all of the relief to which they were entitled.  Plaintiffs therefore filed an amended complaint.

Defendant moves to dismiss plaintiffs' amended complaint for lack of jurisdiction and for failure to state a claim upon which relief could be granted.  In response, plaintiffs move for leave to file a second amended complaint to add a sixth plaintiff.  The parties have fully briefed their motions, and the court heard argument.  For the reasons set forth below, the court grants defendant's motion to dismiss for lack of jurisdiction and denies the remaining motions as moot.

## I.  BACKGROUND

### A.  Statutory and Regulatory Context

When members of the United States military are deemed to be unfit to perform their duties due to a physical disability, they may be retired or separated from service.[1]  A member who has served for at least twenty years or has received a disability rating of at least thirty percent may be retired with disability retired pay.  10 U.S.C. § 1201 (2012).  Depending on the stability and permanence of the disability, the member will be placed either on the permanent disability retired list ("PDRL") or the temporary disability retired list ("TDRL").  Id. § 1202; Secretary of the Navy Instruction ("SECNAVINST") 1850.4E, § 3705 (Apr. 30, 2002). Members not eligible for disability retirement–those with less than twenty years of service and a disability rating of less than thirty percent–may be separated with disability severance pay.  10 U.S.C. § 1203.

---

[1]  Normally, in ruling on a motion to dismiss, the court considers only the allegations set forth in the complaint.  Am. Contractors Indem. Co. v. United States, 570 F.3d 1373, 1376 (Fed. Cir. 2009).  However, to allow for a fuller understanding of the events that occurred in this case, the court  derives the facts in this background section from the complaint, the amended complaint and attached exhibits, the proposed second amended complaint and attached exhibits, the exhibits attached to the parties' briefs, and relevant statutes and regulations.  The court also derives facts from the filings in another case pending in this court, Sabo v. United States, No. 08-899C, of which it takes judicial notice.  See Fed. R. Evid. 201; United States v. Estep, 760 F.2d 1060, 1063 (10th Cir. 1985) (holding that a court may take judicial notice of court records of closely related prior litigation).  As reflected in the discussion below, the court did not rely on any facts beyond those alleged in plaintiffs' amended complaint to resolve the pending motions.

When service members are retired or separated, they are issued a DD Form 214 (Certificate of Release or Discharge From Active Duty) that documents their active duty military service and contains a separation program designator code ("SPD code") indicating the reason for the member's retirement or separation. <u>See generally</u> Department of Defense Instruction 1336.01 (Aug. 20, 2009); Bureau of Naval Personnel Instruction 1900.8D (June 10, 2011). A new DD Form 214 is not issued when a service member is removed from the TDRL and permanently retired, <u>id.</u>; rather, the service member receives a notice that he or she was discharged from the TDRL. Regardless of whether service members are retired or separated, they are entitled to apply to the VA for disability compensation. <u>See</u> 38 U.S.C. §§ 1110, 1131 (2012).

Prior to 2008, veterans of the United States military were prohibited from receiving both disability severance pay and VA disability compensation. With the enactment of the National Defense Authorization Act of 2008 on January 28, 2008, the status quo changed for veterans whose disabilities were the result of combat-related injuries. The prohibition against double recovery was amended to provide:

> (1)  The amount of disability severance pay received under this section shall be deducted from any compensation for the same disability to which the former member of the armed forces or his dependents become entitled under any law administered by the Department of Veterans Affairs.

> (2)  No deduction may be made under paragraph (1) in the case of disability severance pay received by a member for a disability incurred in line of duty in a combat zone or incurred during performance of duty in combat-related operations as designated by the Secretary of Defense.

10 U.S.C. § 1212(d) ("section 1212(d)"). In other words, veterans with combat-related disabilities could receive both disability severance pay and VA disability compensation.[2]

## B.  The Military's Implementation of Section 1212(d)

Shortly after the enactment of the National Defense Authorization Act of 2008, the United States Department of Defense ("Defense Department") revised several of its regulations to allow for the implementation of the Act's disability provisions. The revisions, disseminated to the military departments with a March 13, 2008 memorandum, included changes regarding how to report a disability-related separation on a service member's DD Form 214. Specifically, the Defense Department replaced the SPD code used to indicate a disability separation (JFL) with SPD codes to indicate combat-related disability separations (JFI and JEA) and noncombat-related

---

[2]  There are other rules, not relevant here, for determining whether veterans are entitled to concurrent payment of disability retired pay and VA disability compensation. <u>See</u> 10 U.S.C. § 1414.

disability separations (JFO and JEB).  The Defense Department indicated that the new SPD codes should be used immediately.  The VA, having coordinated with the Defense Department, advised all of its regional offices and centers of the new SPD codes in a May 21, 2008 memorandum.  It noted that, effective January 28, 2008, veterans who were awarded disability compensation and were assigned one of the two new combat-related disability SPD codes on their DD Forms 214 should not have their disability compensation reduced by the amount of their disability severance pay.

Notwithstanding the guidance provided in the Defense Department's March 13, 2008 memorandum, the United States Department of the Navy ("Navy") and the United States Marine Corps ("Marine Corps") did not immediately begin to use the new SPD codes for disability separations.  In fact, the Navy did not begin to use the new SPD codes until May 2008 and the Marine Corps did not begin to use the new SPD codes until either February 2009 or October 2010.[3]

### C.  Plaintiffs' Suit and the Government's Response

Plaintiffs Dustin Bargsley, Randy Howard, and Sonny Morrison filed suit on July 25, 2012, alleging that they were separated from the Marine Corps due to combat-related disabilities, but that their DD Forms 214 did not contain one of the two new combat-related disability SPD codes.  Thus, when they began to receive disability compensation from the VA, the VA withheld funds from that compensation to recoup their disability severance pay.  Accordingly, they sought in their complaint the correction of their DD Forms 214 and the repayment of the funds withheld from their VA disability compensation.  They also sought the same relief for the class of similarly situated individuals.

After filing their complaint, plaintiffs worked with the government to resolve the matter amicably.  In furtherance of these efforts, the Navy, the Marine Corps, and the VA took a number of corrective actions.  First, the Navy sought to determine all of the individuals who were separated from the Navy and the Marine Corps due to combat-related disabilities between January 28, 2008, the effective date of the revision to the disability severance pay rules, and November 1, 2012.  This task was assigned to the Navy's Physical Evaluation Board ("PEB"), which is responsible both for assessing the fitness of sailors and marines to serve, and for determining whether sailors and marines with duty-related impairments are entitled to benefits.  The PEB reviewed its database and determined that it had made a disability severance finding for 2,502 service members during the relevant time period.

---

[3] Plaintiffs allege in their amended complaint that the Marine Corps did not begin to use the new SPD codes until October 2010, but defendant provided a sworn declaration indicating that the Marine Corps began to use the new SPD codes in February 2009.  This factual dispute is irrelevant to the resolution of defendant's motion.

The PEB then reviewed its records for those 2,502 service members to determine whether the members' disabilities were incurred in line of duty in a combat zone (the records already indicated whether the members' disabilities were combat related).  It identified 261 service members (57 sailors and 204 marines) who lacked the appropriate combat-zone or combat-related finding, and forwarded that information to the personnel offices of the Navy and the Marine Corps for further action.  It then sent notices to the other 2,241 service members whose files were reviewed to advise them that (1) their records had been reviewed to ascertain whether they had been injured in a combat zone, (2) the PEB confirmed that their injury was not sustained in a combat zone, (3) no further action was necessary, and (4) if they believed that there was an error or injustice in the PEB's finding, they could appeal the finding at the Board for Correction of Naval Records.[4]

In addition to ensuring that it had made a combat-zone or combat-related finding for eligible service members, the PEB worked with the Navy and the Marine Corps to identify service members who had been given a combat-zone or combat-related finding, but whose separation documents may have nevertheless lacked one of the two new combat-related disability SPD codes.  Through this process, 242 sailors and 818 marines were identified as being potentially eligible to receive one of the new SPD codes.[5]

The next step for the Navy and the Marine Corps was to review the records of the 1,060 sailors and marines who were potentially eligible to receive one of the new combat-related disability SPD codes to determine whether they required correction.  The Navy determined that the records of 115 sailors required a more thorough review, and that a record correction was required for only 54 of those sailors.  Of those 54 sailors, 34 had incorrect SPD codes on their DD Forms 214 and therefore required new or corrected forms, and 20 were separated from the TDRL and therefore required notification that their disabilities were incurred in a combat zone or during combat-related operations.  The remaining sailors did not need record corrections because they were not yet separated, not injured in a combat zone or during combat-related operations, in possession of an original or corrected DD Form 214 with the proper SPD code, placed on the PDRL, transferred to the Fleet Reserve or the Reserve Retired List, or separated prior to January 28, 2008.

_____

[4] But see SECNAVINST 1850.4E, § 3508 ("A determination by the PEB that a disability is not combat-related may be appealed by the member to the JAG.  The appeal shall be by letter addressed to the Judge Advocate General of the Navy . . . and shall set forth the reasons the member disagrees with the determination of the PEB.  The member's disability evaluation proceedings will not be delayed or abated pending action on the appeal by the JAG.").

[5] The 242 sailors identified through this process included the 57 sailors who had not received the appropriate combat-zone or combat-related finding from the PEB.  It is not explicitly stated whether the 818 marines identified through this process included the 204 marines who had not received the appropriate combat-zone or combat-related finding from the PEB.  However, the evidence suggests that the 204 marines were so included.

The Marine Corps determined that 447 marines had incorrect SPD codes on their DD Forms 214 and therefore required new forms, and that 100 marines who were separated from the TDRL required notification that their disabilities were incurred in a combat zone or during combat-related operations.  The remaining 271 marines did not require corrected records because their separation documents contained the correct SPD codes, either originally or as later corrected.

As just noted, both the Navy and the Marine Corps determined that some of the potentially affected service members already had their records corrected, and therefore did not need corrected separation documents.  Many of these corrections were made as a result of the settlement in Sabo v. United States, a class action filed in this court in 2008.  The plaintiffs in that suit are veterans who were diagnosed with posttraumatic stress disorder ("PTSD") as a result of their service during the wars in Afghanistan and Iraq.  They were subsequently deemed unfit for duty, assigned disability ratings of less than 50%, and separated from the military.  In their complaint, the plaintiffs alleged that they were entitled under federal law to disability ratings of at least 50%, which would have made them eligible for additional benefits, including enhanced disability retired pay.  The parties in that suit ultimately reached a settlement.  Their agreement provided, in part, that class members who were not placed on the TDRL after separation or retirement for disability would have their records corrected to indicate that they were placed on the TDRL at the time of their separation and given a 50% disability rating for the first six months following their separation or retirement.  The parties are actively executing their agreement.

Returning to the actions taken by the Navy and the Marine Corps in response to this suit, after the two service branches identified the records that required correction, they generated new or corrected separation documents and forwarded those documents to the affected service members.  They also advised the VA of the corrections they made to enable the VA to take whatever corrective action was necessary, including the restoration of the funds withheld from the veterans' disability compensation.  Both the Navy and the Marine Corps attest that all service members with combat-related disabilities who were separated with disability severance pay after January 28, 2008, have the correct SPD codes on their separation documents.

The VA, for its part, reviewed its records for the veterans identified by the Navy and the Marine Corps.  It determined that it was necessary to restore disability compensation to 210 of those veterans.  The remaining veterans identified by the Navy and the Marine Corps never had their VA disability compensation reduced to recoup their disability severance pay.

### D.  Plaintiffs' Amended Complaint and Defendant's Response

Notwithstanding the actions taken by the Navy, the Marine Corps, and the VA in response to plaintiffs' suit, plaintiffs do not believe that the Navy and the Marine Corps have fully complied with the requirements of section 1212(d) and the implementing regulations promulgated by the Defense Department.  Accordingly, they revived the litigation on May 15, 2014, by filing an amended complaint.  Of particular note, the amended complaint includes two

new named plaintiffs–Brian Wilson and Alfonso Aguilar–and the following revised definition of plaintiffs' proposed class:

> The Class consists of all individuals (i) who served on active duty in the United States Navy or Marine Corps; (ii) who were evaluated and found by a Navy PEB to be unfit for continued service due to an unfitting condition but for whom the Navy PEB failed to make a determination whether the unfitting condition was combat-related within the meaning of 10 U.S.C. § 1212(d)(2); (iii) who, based on the PEB proceeding, were medically separated from active duty on or after January 28, 2008; (iv) on whose DD Form 214 the Department of the Navy failed to insert one of the four SPD codes mandated by the [Defense Department's March 13, 2008 memorandum] at the time of separation; (v) who received a disability severance payment at the time of separation; and (vi) who later applied for and were granted VA disability compensation for one or more of the veteran's unfitting conditions, which the VA began to withhold in order to recoup the amount of the disability severance payment.

Am. Compl. ¶ 114.  In addition, plaintiffs' sole claim for relief was revised as follows:

> 123.  10 U.S.C. § 1212(d)(2) . . . confers a substantive right to monetary benefits against the United States by prohibiting the United States from recouping the amount of military disability severance pay through withholding of VA disability compensation to which a medically separated sailor or Marine was otherwise entitled.
>
> 124.  Plaintiffs and proposed class members have been unlawfully deprived of the full amount of their military disability severance pay and VA disability compensation to which they are entitled under 10 U.S.C. § 1212(d)(2), . . . as a result of the Department of the Navy's failure to implement 10 U.S.C. § 1212(d)(2), and as directed by the [Defense Department's March 13, 2008 memorandum,] by the Department of the Navy and the Navy PEB failing to make a determination as to whether the sailor's or Marine's disability that led to their medical separation was combat-related within the meaning of 10 U.S.C. § 1212(d)(2).  The failure of the Department of the Navy to implement 10 U.S.C. § 1212(d)(2) . . . as directed by the [Defense Department's March 13, 2008 memorandum] caused Plaintiffs and proposed class members to not have the appropriate SPD code of JFI or JEA listed on a DD Form 214 that would have notified the VA that recoupment of any disability severance pay was improper.
>
> 125.  The Department of the Navy's failure to implement 10 U.S.C. § 1212(d)(2) . . . was arbitrary, capricious and contrary to law.

126.   As a direct result of the Department of the Navy's failure to act in accordance with existing federal laws and administrative directives, Plaintiffs and the proposed class members have been, and continue to be, deprived of the military disability severance pay and other benefits to which they are entitled under 10 U.S.C. § 1212(d)(2) and/or uninformed of their rights to appeal any decision resulting from this process for which they contest.

Id. ¶¶ 123-26.   Finally, plaintiffs expanded the scope of the relief they were seeking from the government.   The relief they request now includes the following:

a.   Certify this action as a class action on behalf of the proposed Class;

. . . .

d.   Order the United States, through its Department of [the] Navy, to investigate and identify each former sailor or Marine who satisfies the definition of the putative class . . . and share the identities of the putative class members with Plaintiffs' counsel; or, alternatively, permit and empower Plaintiffs' counsel to perform this role;

e.   Order the United States, through its Department of [the] Navy, to make combat-related determinations as required by 10 U.S.C. § 1212(d)(2) and correct the Plaintiffs' and proposed class members' DD Forms 214 with the correct SPD code pursuant to the [Defense Department's March 13, 2008 memorandum] irrespective of the outcome of the determination so that the DD Form 214 accurately reflects the Plaintiffs' and proposed class members' status at the time of separation;

f.   Issue a protective order thereby allowing Plaintiffs' counsel to conduct a complete review of the results of the Department of [the] Navy's review for each Plaintiff and putative class member;

g.   Issue a protective order thereby allowing Plaintiffs' counsel to conduct a complete review of the records and documents utilized by the United States in determining the amount of severance pay recouped by the VA[;]

h.   Order the Department of [the] Navy and VA to notify all named Plaintiffs and each member of the putative class of the results of the Department of [the] Navy's review and the impact to the veterans' VA benefits, for both affirmative and negative determinations;

i.  Order the Department of [the] Navy to include in the notification to those Plaintiffs and proposed class members for whom the Navy PEB has determined to

continue to not meet the requirements of 10 U.S.C. § 1212(d) information detailing the appropriate process and venue for appeal should the veteran disagree with the Navy PEB determination;

j.  Order the United States, through its Department of [the] Navy, to (i) pay to each former sailor or Marine whose unfitting conditions were combat-related a payment equal to the aggregate amount of military disability severance pay that has been recouped by VA from the veteran's disability compensation payments in the past; (ii) cease offsetting the veteran's VA disability compensation to recover military disability severance pay in the future; and (iii) allow Plaintiffs' counsel to conduct a verification of the repayment, offsetting or final accounting for each class member.

Id. at 38-40.

Defendant responded to plaintiffs' amended complaint by filing a combined motion to dismiss and "Opposition to Plaintiffs' Motion for a Protective Order and Class Certification."[6] Plaintiffs then filed a combined opposition to defendant's motion to dismiss and "Response to Opposition to Plaintiffs' Motion for Protective Order and Class Certification."  Plaintiffs also filed a motion for leave to file a second amended complaint seeking, among other things, to add a sixth named plaintiff–Christopher Spurlock–to the suit.  Defendant filed a consolidated reply in support of its motion to dismiss and response to plaintiffs' motion for leave to file a second amended complaint, and plaintiffs filed a reply in support of their motion.

---

[6] Although defendant characterized its filing as an opposition to plaintiffs' motions, plaintiffs had not filed motions to certify their proposed class or for the issuance of a protective order.  Some federal appellate courts interpret Rule 23 of the Federal Rules of Civil Procedure to require trial courts to rule on class certification even in the absence of a motion from the parties. See, e.g., Kasalo v. Harris & Harris, Ltd., 656 F.3d 557, 563 (7th Cir. 2011); McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5th Cir. 1981); Horn v. Associated Wholesale Grocers, Inc., 555 F.2d 270, 274 (10th Cir. 1977); Senter v. Gen. Motors Corp., 532 F.2d 511, 520 (6th Cir. 1976).  However, because the court concludes that it lacks jurisdiction to entertain plaintiffs' claims, it need not determine whether a sua sponte ruling on class certification is warranted in this matter.  Indeed, to do so would violate the rule that "'[f]ederal courts are not in the business of rendering advisory opinions.'"  Strategic Hous. Fin. Corp. of Travis Cnty. v. United States, 608 F.3d 1317, 1332 (Fed. Cir. 2010) (quoting C&H Nationwide, Inc. v. Norwest Bank Tex. NA, 208 F.3d 490, 493 (5th Cir. 2000)); see also id. (quoting the dissenting opinion in Alabama v. Shelton, 535 U.S. 654, 676 (2002), in which Justice Antonin Scalia remarked that the United States Supreme Court had "no business offering an advisory opinion").

### E.  The Actual and Proposed Named Plaintiffs

Some of the arguments raised by the parties in their motions and briefs implicate the particular circumstances of each of the actual and proposed named plaintiffs.  Thus, the court briefly describes what happened to each of these individuals.

### 1.  Dustin Bargsley

Dustin Bargsley enlisted in the Marine Corps on June 8, 2004, and was deployed in Iraq from July 2006 to February 2007.  He was diagnosed with PTSD and on December 20, 2007, the PEB determined that he was unfit for duty.  The PEB assigned him a 10% disability rating and noted that his disability was both the result of a combat-related injury and incurred in the line of duty as a direct result of armed conflict.  Thereafter, on February 15, 2008, he was honorably discharged from the Marine Corps at the rank of corporal.  The SPD code on his DD Form 214 was "JFL1," and not one of the new codes reflecting that his separation was due to a combat-related disability.  He was awarded $17,156.96 in disability severance pay.

After his separation, Mr. Bargsley applied to the VA for benefits.  On November 10, 2008, the VA assigned him a disability rating of 50% and awarded him disability compensation.  However, because his DD Form 214 did not reflect that he had a combat-related disability, the VA began to withhold from that compensation an amount equal to his disability severance pay award.

On September 17, 2010, for a reason not reflected in the documents currently before the court, the Marine Corps issued Mr. Bargsley a new DD Form 214.  This DD Form 214 contained a different SPD code–"SFK1"–indicating that Mr. Bargsley was temporarily retired for disability (rather than separated for disability).  On May 4, 2012, the VA paid Mr. Bargsley $9,633.94, which represented the amount withheld by the VA to recoup Mr. Bargsley's disability severance pay less a $7,523.02 debt that Mr. Bargsley owed to the VA.

Then, in a June 21, 2012 letter, as a result of the settlement agreement in <u>Sabo v. United States</u>, the Marine Corps revoked Mr. Bargsley's previous discharge orders and placed him on the TDRL with a 50% disability rating, retroactive to his initial separation date.  It also placed Mr. Bargsley on the PDRL with a 50% disability rating, retroactive to August 15, 2008.  The Marine Corps advised Mr. Bargsley that he should attach a copy of its letter to his DD Form 214 as proof of his status on the PDRL.

Plaintiffs allege that on September 19, 2012, after they filed their original complaint, Mr. Bargsley was issued a corrected DD Form 214 that included an SPD code of "JFI1," reflecting that his separation was the result of a combat-related disability.[7]  They further allege that in 2013,

---

[7]  Unlike the September 17, 2010 DD Form 214, neither plaintiffs nor defendant submitted a copy of Mr. Bargsley's September 19, 2012 DD Form 214 with their filings.

Mr. Bargsley inexplicably received a letter indicating that the PEB had reviewed his record and reaffirmed that his disability was not incurred in a combat zone.

## 2. Randy Howard

Randy Howard enlisted in the Marine Corps on October 14, 2003, and was twice deployed in Iraq, most recently from March 2006 to October 2006. He was diagnosed with PTSD and on February 20, 2008, the PEB determined that he was unfit for duty. The PEB assigned him a 20% disability rating and noted that his disability was both the result of a combat-related injury and incurred in the line of duty as a direct result of armed conflict. Thereafter, on May 15, 2008, he was honorably discharged from the Marine Corps at the rank of corporal. The SPD code on his DD Form 214 was "JFL1," and not one of the new codes reflecting that his separation was due to a combat-related disability. He was awarded $24,573.60 in disability severance pay.

After his separation, Mr. Howard applied to the VA for benefits. The VA ultimately assigned him a disability rating of 60% and awarded him disability compensation. However, because his DD Form 214 did not reflect that he had a combat-related disability, the VA began, in June 2008, to withhold from that compensation an amount equal to his disability severance pay award.

On September 20, 2012, after plaintiffs filed their original complaint, Mr. Howard was issued a corrected DD Form 214 that included an SPD code of "JFI1," reflecting that his separation was the result of a combat-related disability. On December 3, 2012, the VA paid Mr. Howard $24,573.60, the amount that it had withheld to recoup Mr. Howard's disability severance pay.

## 3. Sonny Morrison

Sonny Morrison enlisted in the Marine Corps on February 22, 2006, and was deployed in Iraq from January 2007 to August 2007. He was diagnosed with PTSD and traumatic brain injury, and on June 10, 2008, the PEB determined that he was unfit for duty. The PEB assigned him a 20% disability rating and noted that his disability was both the result of a combat-related injury and incurred in the line of duty as a direct result of armed conflict. Thereafter, on July 30, 2008, he was honorably discharged from the Marine Corps at the rank of lance corporal. The SPD code on his DD Form 214 was "JFL1," and not one of the new codes reflecting that his separation was due to a combat-related disability. He was awarded $21,200.83 in disability severance pay.

After his separation, Mr. Morrison applied to the VA for benefits. The VA ultimately assigned him a disability rating of 90% and awarded him disability compensation. However, because his DD Form 214 did not reflect that he had a combat-related disability, the VA began,

in September 2008, to withhold from that compensation an amount equal to his disability severance pay award.

In a February 15, 2012 letter, as a result of the settlement agreement in <u>Sabo v. United States</u>, the Marine Corps revoked Mr. Morrison's previous discharge orders and placed him on the TDRL with a 60% disability rating, retroactive to his initial separation date. It also placed Mr. Morrison on the PDRL with a 60% disability rating, retroactive to January 31, 2009. The Marine Corps advised Mr. Morrison that he should attach a copy of its letter to his DD Form 214 as proof of his status on the PDRL. Subsequently, on February 23, 2012, the Marine Corps corrected Mr. Morrison's DD Form 214 to show a different SPD code–"SFK1"–indicating that Mr. Morrison was temporarily retired for disability (rather than separated for disability).

Plaintiffs allege that on September 19, 2012, after they filed their original complaint, Mr. Morrison was issued a corrected DD Form 214 that included an SPD code of "JFI1," reflecting that his separation was the result of a combat-related disability.[8] On December 3, 2012, the VA paid Mr. Morrison $15,900.62, the amount that it claims it had withheld to recoup Mr. Morrison's disability severance pay.

#### 4. Brian Wilson

Brian Wilson enlisted in the Marine Corps on January 20, 2004, and was deployed in Iraq in 2005 and 2006. He was diagnosed with PTSD, traumatic brain injury, and hearing loss, and on January 17, 2008, the PEB determined that he was unfit for duty. The PEB assigned him a 20% disability rating and noted that his disability was both the result of a combat-related injury and incurred in the line of duty as a direct result of armed conflict. Thereafter, on March 31, 2008, he was honorably discharged from the Marine Corps at the rank of corporal. The SPD code on his DD Form 214 was "JFL1," and not one of the new codes reflecting that his separation was due to a combat-related disability. He was awarded $24,573.60 in disability severance pay.

After his separation, Mr. Wilson applied to the VA for benefits. The VA ultimately assigned him a disability rating of 90% and awarded him disability compensation. However, because his DD Form 214 did not reflect that he had a combat-related disability, the VA began, in May 2008, to withhold from that compensation an amount equal to his disability severance pay award.

In a March 11, 2011 letter, as a result of his successful appeal of the disability rating assigned by the PEB to the Physical Disability Review Board, the Marine Corps revoked Mr. Wilson's previous discharge orders and placed him on the TDRL with a 70% disability rating, retroactive to his initial separation date. It also placed Mr. Wilson on the PDRL with a 70%

---

[8] Neither plaintiffs nor defendant submitted a copy of Mr. Morrison's September 19, 2012 DD Form 214 with their filings.

disability rating, retroactive to September 30, 2008.  The Marine Corps advised Mr. Wilson that he should attach a copy of its letter to his DD Form 214 as proof of his status on the PDRL. Subsequently, on June 1, 2011, the Marine Corps corrected Mr. Wilson's DD Form 214 to show a different SPD code–"SFK1"–indicating that Mr. Wilson was temporarily retired for disability (rather than separated for disability).

Two weeks later, in a September 13, 2013 letter, the PEB advised Mr. Wilson that it had reviewed his record and reaffirmed that his injury was not incurred in a combat zone.  However, on November 22, 2013, the PEB sent Mr. Wilson another letter indicating that the prior letter had been sent to him in error, and that the PEB had, in fact, found that his injury was incurred in a combat zone.

The Marine Corps did not issue Mr. Wilson a new or corrected DD Form 214 to reflect that he was originally separated due to a combat-related disability because his records had already been corrected to reflect a retroactive disability retirement.  Nevertheless, on July 14, 2014, two months after Mr. Wilson was added as a named plaintiff in the amended complaint, the VA instructed the relevant regional office to restore the amounts it withheld to recoup Mr. Wilson's disability severance pay.  One week later, the VA paid Mr. Wilson $18,430.20.

### 5.  Alfonso Aguilar

Alfonso Aguilar enlisted in the Marine Corps on August 6, 2001, and was deployed in Iraq from March 2004 to September 2004.  He was diagnosed with PTSD and on May 6, 2008, the PEB determined that he was unfit for duty.  The PEB assigned him a 10% disability rating and noted that his disability was both the result of a combat-related injury and incurred in the line of duty as a direct result of armed conflict.  Thereafter, on September 15, 2008, he was honorably discharged from the Marine Corps at the rank of staff sergeant.  The SPD code on his DD Form 214 was "JFL1," and not one of the new codes reflecting that his separation was due to a combat-related disability.  He was awarded $64,468.80 in disability severance pay.

After his separation, Mr. Aguilar applied to the VA for benefits.  The VA ultimately assigned him a disability rating of 70% and awarded him disability compensation.  However, because his DD Form 214 did not reflect that he had a combat-related disability, the VA began, in May 2008, to withhold from that compensation an amount equal to his disability severance pay award.

In a February 15, 2012 letter, as a result of the settlement agreement in Sabo v. United States, the Marine Corps revoked Mr. Aguilar's previous discharge orders and placed him on the TDRL with a 50% disability rating, retroactive to his initial separation date.  It also placed Mr. Aguilar on the PDRL with a 50% disability rating, retroactive to November 16, 2008.  The Marine Corps advised Mr. Aguilar that he should attach a copy of its letter to his DD Form 214 as proof of his status on the PDRL.  Subsequently, on February 23, 2012, the Marine Corps

corrected Mr. Aguilar's DD Form 214 to show a different SPD code–"SFK1"–indicating that Mr. Aguilar was temporarily retired for disability (rather than separated for disability).

The Marine Corps did not issue Mr. Aguilar a new or corrected DD Form 214 to reflect that he was originally separated due to a combat-related disability because his records had already been corrected to reflect a retroactive disability retirement.  Nevertheless, on July 14, 2014, two months after Mr. Aguilar was added as a named plaintiff in the amended complaint, the VA instructed the relevant regional office to restore the amounts it withheld to recoup Mr. Aguilar's disability severance pay.  One week later, the VA paid Mr. Aguilar $25,253.55.

### 6.  Christopher Spurlock

Christopher Spurlock, the individual identified in plaintiffs' proposed second amended complaint, enlisted in the Marine Corps on January 26, 1998, and had three tours of duty in Iraq from 2004 to 2007.  He was diagnosed with PTSD and on December 20, 2007, the PEB determined that he was unfit for duty.  The PEB assigned him a 10% disability rating and noted that his disability was both the result of a combat-related injury and incurred in the line of duty as a direct result of armed conflict.  Thereafter, on February 15, 2008, he was honorably discharged from the Marine Corps at the rank of corporal.  The SPD code on his DD Form 214 was "JFL1," and not one of the new codes reflecting that his separation was due to a combat-related disability. He was awarded $17,156.96 in disability severance pay.

After his separation, Mr. Spurlock applied to the VA for benefits.  The VA ultimately assigned him a disability rating of 80% and awarded him disability compensation.  However, because his DD Form 214 did not reflect that he had a combat-related disability, the VA began, in October 2008, to withhold from that compensation an amount equal to his disability severance pay award.

On September 17, 2010, for a reason not reflected in the documents currently before the court, the Marine Corps corrected Mr. Spurlock's DD Form 214.  The corrected DD Form 214 contained a different SPD code–"SFK1"–indicating that Mr. Spurlock was temporarily retired for disability (rather than separated for disability).

The Marine Corps did not issue Mr. Spurlock a new or corrected DD Form 214 to reflect that he was originally separated due to a combat-related disability because his records had already been corrected to reflect a retroactive disability retirement.  Further, the VA has not repaid Mr. Spurlock the amount it withheld to recoup his disability severance pay.

### F.  Recent Procedural History

After reviewing the parties' motions and briefs, the court directed the submission of supplemental briefing on several issues that the parties had not addressed.  The parties filed

-14-

supplemental memoranda and presented oral argument.  The court is now prepared to rule on the
parties' motions.

## II.  DISCUSSION

Defendant moves to dismiss plaintiffs' amended complaint for lack of jurisdiction
pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"),
and for failure to state a claim upon which relief could be granted pursuant to RCFC 12(b)(6).
Plaintiffs move for leave to file a second amended complaint pursuant to RCFC 15(a)(2).  The
court begins its discussion, as it must, with defendant's RCFC 12(b)(1) motion.

### A.  Defendant's RCFC 12(b)(1) Motion

### 1.  Standard of Review

In ruling on a motion to dismiss, the court assumes that the allegations in the complaint
are true and construes those allegations in the plaintiff's favor.  Henke v. United States, 60 F.3d
795, 797 (Fed. Cir. 1995).  However, the plaintiff bears the burden of proving, by a
preponderance of the evidence, that the court possesses subject matter jurisdiction.  McNutt v.
Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (noting that if a plaintiff's "allegations
of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support
them by competent proof"); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.
Cir. 1988) (agreeing that the plaintiff bore "the burden of establishing subject matter jurisdiction
by a preponderance of the evidence").  The court may look to evidence outside of the pleadings
to determine the existence of subject matter jurisdiction.  Land v. Dollar, 330 U.S. 731, 735 &
n.4 (1947).  If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3)
requires the court to dismiss that claim.

### 2.  Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter.  See
Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  "Without jurisdiction the
court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it
ceases to exist, the only function remaining to the court is that of announcing the fact and
dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  The parties or the
court sua sponte may challenge the court's subject matter jurisdiction at any time.  Arbaugh v. Y
& H Corp., 546 U.S. 500, 506 (2006).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to
entertain suits against the United States is limited.  "The United States, as sovereign, is immune
from suit save as it consents to be sued."  United States v. Sherwood, 312 U.S. 584, 586 (1941).
The waiver of immunity "cannot be implied but must be unequivocally expressed."  United
States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

Notably, the court can be divested of its Tucker Act jurisdiction. When a separate "'specific and comprehensive scheme for administrative and judicial review' is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." Vereda, Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (quoting St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 549-50 (Fed. Cir. 1994)); accord United States v. Bormes, 133 S. Ct. 12, 18 (2012) (noting that "statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act"); United States v. Fausto, 484 U.S. 439, 454 (1988) (holding that a statute's "comprehensive and integrated review scheme" deprived the United States Claims Court of jurisdiction to review a claim arising under that statute).

### 3. Section 1212(d) Is a Money-Mandating Statute

Plaintiffs premise their sole claim for relief on section 1212(d), which describes when, how, and from whom the government can recoup an award of disability severance pay. Defendant argues, however, that section 1212(d) is not a money-mandating statute and therefore cannot provide the basis for the court's exercise of jurisdiction. Plaintiffs disagree, asserting that because section 1212(d) guarantees that service members who incurred combat-related disabilities are entitled to the full amount of the disability severance pay awarded by the relevant service branch, "protected from reduction as a result of later payments by the VA for the same disability," it is a money-mandating statute. Pl.'s Resp. 6.

It is well accepted that a statute "is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (panel portion) (quoting United States v. Mitchell, 463 U.S. 206, 219 (1983)). Under this rule, "[i]t is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003) (citation omitted).

Section 1212(d) sets forth the general rule that veterans who receive disability compensation from the VA must have that compensation reduced by the amount of any disability

severance pay they previously received from the military for the same disability.  10 U.S.C. § 1212(d)(1).  However, a veteran's disability compensation may not be reduced if the veteran's separation from the military was due to a combat-related disability.  Id. § 1212(d)(2).  In other words, veterans who were separated from the military with combat-related disabilities are exempt from the general provision of section 1212(d) and are instead entitled to receive both disability severance pay and VA disability compensation.  Thus, if a veteran incurred a combat-related disability, but the government nevertheless withholds the amount of the veteran's disability severance pay from the veteran's disability compensation, then the government has breached its statutory obligation under section 1212(d) to fully compensate the veteran for his or her disability.  For these reasons, and in accordance with binding precedent, section 1212(d) is fairly interpreted to mandate the payment of damages if the government does not comply with its terms.

### 4.  The Court of Federal Claims Does Not Possess Jurisdiction to Entertain a Claim Arising Under Section 1212(d)

Normally, once a court determines that a statute is money-mandating, its jurisdictional analysis is concluded.  See Fisher, 402 F.3d at 1173 (en banc portion) ("If the court's conclusion is that the . . . statute . . . meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course.").  However, a second jurisdictional issue is present in this case that requires further analysis.  Defendant contends that section 1212(d) concerns the reduction of disability compensation awarded by the VA.  It further contends that only the VA is statutorily authorized to adjudicate claims related to veterans' benefits.  Therefore, defendant asserts, the Court of Federal Claims lacks jurisdiction to entertain plaintiffs' section 1212(d) claim.  Plaintiffs dispute the basic premise of defendant's argument, asserting that section 1212(d) concerns the reduction and ultimate recoupment of the disability severance pay awarded by the military, and not the reduction of disability compensation awarded by the VA.  Plaintiffs are incorrect.

### a.  Section 1212(d) Concerns the Reduction of Disability Compensation Paid by the VA

The key provision at issue, section 1212(d)(2), provides that "[n]o deduction may be made under [section 1212(d)(1)] in the case of disability severance pay received by a member" due to a combat-related disability.  Section 1212(d)(1), in turn, provides that "[t]he amount of disability severance pay received . . . shall be deducted from any compensation for the same disability to which the former member . . . become[s] entitled under any law administered by the [VA]."  Under the plain language of section 1212(d)(1), the only amounts subject to reduction are amounts awarded by the VA; section 1212(d)(1) does not authorize the reduction of any other payments that the veteran might be receiving (such as another government benefit or a civilian government paycheck).  Because section 1212(d)(1) only authorizes the reduction of compensation paid by the VA, section 1212(d)(2) cannot be read to protect the reduction of anything other than compensation paid by the VA.  In other words, contrary to plaintiffs' assertion, section 1212(d)(2) does not protect the reduction of disability severance pay.

Section 1212(d) is not unique. Similar language exists in 10 U.S.C. § 1174, a statute addressing service members' entitlement to separation pay upon their involuntary discharge or release from active duty. One subsection of that statute provides:

> A member who has received separation pay under this section, or severance pay or readjustment pay under any other provision of law, . . . shall not be deprived . . . of any disability compensation to which he is entitled under the laws administered by the [VA], but there shall be deducted from that disability compensation an amount equal to the total amount of separation pay, severance pay, and readjustment pay received . . . . Notwithstanding the preceding sentence, no deduction may be made from disability compensation for the amount of any separation pay, severance pay, or readjustment pay received because of an earlier discharge or release from a period of active duty if the disability which is the basis for that disability compensation was incurred or aggravated during a later period of active duty.

10 U.S.C. § 1174(h)(2) ("section 1174(h)(2)"). As with section 1212(d), any amounts to be recouped pursuant to section 1174(h)(2) are to be deducted from a veteran's disability compensation. Indeed, section 1174(h)(2) has been construed by the courts to concern the reduction of VA disability compensation, and not the reduction of separation pay. See, e.g., Palm v. United States, 904 F. Supp. 1312, 1315 (M.D. Ala. 1995) (noting that section 1174(h)(2) requires the VA "to withhold the Plaintiff's disability compensation until the separation payment she received is recouped in its entirety"); In re Snodgrass, 244 B.R. 353, 355 (Bankr. W.D. Va. 2000) (holding, in the bankruptcy context, that the VA is entitled, pursuant to section 1174(h)(2), "to recoup the special separation benefit paid to [the veteran] from the disability compensation awarded to [the veteran] from the VA"); Majeed v. Nicholson, 19 Vet. App. 525, 526 (2006) (considering "the proper amount of [a veteran's] separation pay to be recouped by the Secretary [of the VA] from the VA disability compensation otherwise due [the veteran] for his service-connected disabilities"); Robinson v. Comm'r, 71 T.C.M. (CCH) 2590 (T.C. 1996) (remarking that Congress "clearly intended" that under section 1174(h)(2), "taxable separation pay is recouped by withholding nontaxable disability compensation"); see also 38 C.F.R. § 3.22(b)(5) (2012) (indicating that it is the VA that withholds funds pursuant to section 1174(h)(2)).

Also supporting the conclusion that section 1212(d) concerns the reduction of a veteran's disability compensation is 38 U.S.C. § 1161, the statute containing the instructions for making the reduction described in section 1212(d)(1). This statute, located in the title of the United States Code pertaining to veterans' benefits, provides guidance for the VA, not the military. See 38 U.S.C. § 1161 ("The deduction of disability severance pay from disability compensation, to the extent required by section 1212(d) of title 10, shall be made at a monthly rate not in excess of the rate of compensation to which the former member would be entitled based on the degree of such former member's disability as determined on the initial [VA] rating."). Furthermore, it was the VA, and not the Defense Department, that promulgated a regulation to implement the

recoupment requirements of sections 1212(d) and 1174(h)(2).  See 38 C.F.R. § 3.700(a)(3) ("Where the disability or disabilities found to be service-connected are the same as those upon which disability severance pay is granted, . . . an award of compensation will be made subject to recoupment of the disability severance pay.  . . .  For members of the Armed Forces who separated under Chapter 61 of title 10, United States Code, on or after January 28, 2008, no recoupment of severance pay will be made for disabilities incurred in line of duty in a combat zone or incurred during performance of duty in combat-related operations as designated by the Department of Defense."); id. § 3.700(a)(5)(i) ("Where entitlement to disability compensation was established . . . , a veteran who has received separation pay may receive disability compensation for disability incurred in or aggravated by service prior to the date of receipt of separation pay subject to recoupment of the separation pay.").

### b.  Title Thirty-Eight of the United States Code Contains a Statutory Scheme That Divests the Court of Jurisdiction to Entertain Plaintiffs' Claim

Having concluded that section 1212(d) prohibits the government from reducing veterans' disability compensation by the amount of their disability severance pay, the court must next determine whether it is the appropriate forum for plaintiffs' claim that the amount of their disability severance pay was improperly deducted from their VA disability compensation as a result of the Navy and the Marine Corps providing erroneous information to the VA.  As noted above, when Congress provides a comprehensive, integrated scheme for the administrative and judicial review of a particular class of claims, the Tucker Act jurisdiction of the Court of Federal Claims is preempted.  See Bormes, 133 S. Ct. at 18; Fausto, 484 U.S. at 454; Vereda, Ltda., 271 F.3d at 1375.  Here, defendant contends that the VA's disability compensation system is such a scheme.

To obtain a benefit provided under a law administered by the VA, such as compensation for a service-connected disability, veterans must avail themselves of "a unique statutory process subject to judicial review in statutorily designated federal courts."  Addington v. United States, 94 Fed. Cl. 779, 782 (2010).  The process begins with the filing of a claim with the VA.  38 U.S.C. § 5101(a); 38 C.F.R. § 3.151; Rodriguez v. West, 189 F.3d 1351, 1353 (Fed. Cir. 1999) (noting that 38 U.S.C. § 5101(a) and the regulations included in title thirty-eight, chapter one, part three of the Code of Federal Regulations "establish the requirements and procedures for seeking veterans' benefits"); Jones v. West, 136 F.3d 1296, 1299 (Fed. Cir. 1998) ("Section 5101(a) is a clause of general applicability and mandates that a claim must be filed in order for any type of benefit to accrue or be paid.").  Then, pursuant to 38 U.S.C. § 511(a), the Secretary of the VA renders a decision:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans.  Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and

may not be reviewed by any other official or by any court, whether by an action in
the nature of mandamus or otherwise.

The Secretary's decision is final unless the claimant lodges an appeal with the Secretary.  38
U.S.C. § 7104(a).  Final decisions on such appeals are made by the Board of Veterans' Appeals.
Id. § 7104; Disabled Am. Veterans v. Sec'y of Veterans Affairs, 419 F.3d 1317, 1319 (Fed. Cir.
2005) ("The Board is an appellate body within the VA that reviews initial decisions made under
38 U.S.C. § 511.").  Claimants dissatisfied with the Board's decision may appeal that decision to
the United States Court of Appeals for Veterans Claims, the tribunal with the "exclusive
jurisdiction" to review the Board's decisions.  38 U.S.C. § 7252(a); Bates v. Nicholson, 398 F.3d
1355, 1359 (Fed. Cir. 2005) ("[T]he Court of Appeals for Veterans Claims has jurisdiction to
review decisions of the Board, but it does not have jurisdiction to review other decisions of the
Secretary.").  After the appellate court issues its decision, "any party to the case may obtain a
review of . . . the validity of a decision of the Court on a rule of law or of any statute or
regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the
decision" by filing an appeal with the United States Court of Appeals for the Federal Circuit
("Federal Circuit").  38 U.S.C. § 7292; Prinkey v. Shinseki, 735 F.3d 1375, 1382 (Fed. Cir.
2013) ("[T]his court has no power to resolve any factual dispute in a case decided by the
Veterans Court.").  Altogether, Congress has created a "unique statutory process of adjudication
through which veterans seek [the] benefits" to which they are entitled.  Elkins v. Gober, 229 F.3d
1369, 1375 (Fed. Cir. 2000).  In fact, the Federal Circuit has described this adjudicatory process
as a "comprehensive statutory and regulatory scheme for the award of veterans' benefits . . . ."
White v. Principi, 243 F.3d 1378, 1381 (Fed. Cir. 2001); accord Farnsworth v. United States, 106
Fed. Cl. 513, 519 (2012); Addington, 94 Fed. Cl. at 782; Jackson v. United States, 80 Fed. Cl.
560, 567 (2008); see also Sindram v. United States, 130 F. App'x 456, 458 (Fed. Cir. 2005)
(unpublished opinion) (agreeing that "an appeal to the Veterans Court is the exclusive judicial
remedy for the denial of a veteran's benefits, thereby preempting Tucker Act jurisdiction over the
plaintiff's claims"); West v. United States, 103 Fed. Cl. 55, 63 (2012) (describing the different
levels of review of a claim for veterans' benefits and concluding that the Court of Federal Claims
lacked jurisdiction to entertain such a claim); cf. Cunningham v. United States, 549 F.2d 753,
766 (Ct. Cl. 1977) ("The [predecessor to 38 U.S.C. § 511(a)] makes decisions of the VA on any
question of law or fact concerning a claim for benefits or payments final and conclusive and not
subject to judicial review, with certain exceptions . . . .  Veterans' benefits are considered to be
gratuities, and establish no vested rights in the recipients, so that Congress is not obligated to
provide a remedy through the courts but may provide only an administrative remedy.").

        The Court of Federal Claims has previously concluded that the comprehensive statutory
and regulatory scheme for awarding veterans' benefits divests it of jurisdiction to adjudicate a
claim for the recovery of funds withheld from VA disability compensation to recoup a veteran's
separation pay.  In Carlisle v. United States, the plaintiff contended that the VA "inappropriately
reduced his disability payments by setting off against them separation pay that allegedly should
have been recouped upon [his] reinstatement."  66 Fed. Cl. 627, 633 (2005).  In considering
whether it possessed jurisdiction to entertain such a claim, the court noted that the plaintiff was

not seeking "an affirmative recovery of his separation pay," but "a declaration that the [VA] should not reduce his disability benefits by recouping his separation pay." Id.; see also id. at 634 n.3 (noting that recoupment of the plaintiff's separation pay was required by section 1174(h)(2) and 38 C.F.R. § 3.700(a)(5)).  The court further noted that both the Board of Veterans' Appeals and the United States Court of Appeals for Veterans Claims "regularly considered" the type of claim raised by the plaintiff.  Id. at 633; see also id. at 634 (citing a number of decisions in which the two tribunals considered claims "testing the legality of such recoupments" and "factually questioning the amount of the recoupment").  Because it "appear[ed]" that the plaintiff's claim fell "within the exclusive review mechanism established by Congress for the denial of veteran's benefits," the court concluded that it lacked jurisdiction to entertain it.  Id. at 634; accord Moss v. United States, 101 Fed. Cl. 611, 618-19 (2011) (holding that the plaintiff's claim regarding the VA's decision not to recoup his special separation benefit from his disability compensation was beyond the jurisdiction of the Court of Federal Claims).

The court finds the analysis set forth in Carlisle to be persuasive, and concludes that it should apply equally to claims arising under section 1212(d), a statute that is substantively analogous to section 1174(h)(2).  In other words, the comprehensive, integrated scheme for the administrative and judicial review of claims for veterans' benefits set forth in title thirty-eight of the United States Code preempts the court's jurisdiction to entertain claims concerning the reduction of VA disability compensation pursuant to section 1212(d).  Because plaintiffs' sole claim for relief is premised on section 1212(d), the court is compelled to dismiss plaintiffs' complaint for lack of jurisdiction.  The court does not reach this conclusion lightly.  Given that plaintiffs are wounded veterans who sacrificed greatly for our nation, the court would, if it were legally permissible, accept jurisdiction over this controversy with alacrity to ensure that plaintiffs and all similarly situated veterans receive the full compensation owed by the government.  However, the court is foreclosed from doing so.

### B.  The Parties' Remaining Motions

The court's conclusion that it lacks jurisdiction over the section 1212(d) claim asserted by plaintiffs renders defendant's RCFC 12(b)(6) motion and plaintiffs' motion for leave to file a second amended complaint moot.  Nevertheless, a few comments regarding these motions are in order.  As an initial matter, because defendant supported its RCFC 12(b)(6) motion with evidence beyond the pleadings, including declarations from employees of the Navy, the Marine Corps, and the VA, the court would have been required to treat defendant's motion as a motion for summary judgment and allow the parties the opportunity to present all relevant evidence in support of their positions.  RCFC 12(d); see also Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1355 (Fed. Cir. 2002) ("[T]he trial court may convert a motion to dismiss into a motion for summary judgment under RCFC 56 if it relies on evidence outside the pleadings.").  However, based solely on the evidence presented by the parties with their pleadings and briefs, there appears to be merit to defendant's contention that the plaintiffs named in the amended complaint received the monetary relief they requested–repayment of the amounts withheld by the VA from their disability compensation to recoup their disability severance pay.  If such

repayment occurred, plaintiffs' claims would be moot.  Further, in the absence of any available monetary relief, the court would lack the authority to award plaintiffs the nonmonetary relief they request.  However, the apparent mootness of the named plaintiffs' claims would likely not prevent this litigation from proceeding.  Because the court is required to "freely give" parties leave to amend their pleadings "when justice so requires," RCFC 15(a)(2), and because there is no evidence that the new plaintiff identified in plaintiffs' proposed second amended complaint has received the monetary relief he has requested, the court would have been inclined to grant plaintiffs' motion for leave to file a second amended complaint had it possessed jurisdiction to consider claims arising under section 1212(d).

## III.  CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction and **DISMISSES** plaintiffs' complaint without prejudice.  The court further **DENIES AS MOOT** defendant's motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted and plaintiffs' motion for leave to file a second amended complaint.  No costs.  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge